TAYLOR v KLAHM

1. TRIAL—OPENING STATEMENTS—CONTENTS.

An attorney, in his opening statement, is entitled to set forth the nature of the evidence to be adduced and he is allowed considerable latitude in outlining the evidence to be submitted; what constitutes a fair opening statement is within the trial judge's discretion.

2. FRAUD—UNDUE INFLUENCE—EVIDENCE—ARREST—OPENING STATEMENT—CONTENTS.

Allowing plaintiff's counsel, in his opening statement in a case for wrongfully obtaining money by undue influence, to refer to an incident where money obtained from the plaintiff's decedent was found in defendants' possession when arrested by the police in connection with proceedings about the decedent's assets was not error where the incident was relevant to the issues since both defendants first denied and then later admitted knowledge of the money and because counsel was entitled to set forth the evidence he intended to offer pertaining to the incident.

3. FRAUD—UNDUE INFLUENCE—EVIDENCE—ARREST—POLICE INVESTIGATION.

Allowing a police officer in a trial for securing money by undue influence to testify relating to a prior incident where he had found the money allegedly wrongfully obtained in defendants' possession when he arrested the defendants in connection with an investigation of the missing money was not error where

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial §§ 452, 454.
[2] 53 Am Jur, Trial § 455.
[3] 29 Am Jur 2d, Evidence § 320.
[4] 21 Am Jur 2d, Criminal Law § 340;
    23 Am Jur 2d, Depositions and Discovery § 11.
[5] 29 Am Jur 2d, Evidence §§ 249, 251.
[6] 58 Am Jur, Witnesses § 363.
[7] 45 Am Jur 2d, Interest and Usury § 59 *et seq.*
[8] 53 Am Jur, Trial §§ 903, 906, 907.
[9] 53 Am Jur, Trial § 539 *et seq.*

defendants had denied knowledge of the money, plaintiff had agreed to follow the court-set guidelines to avoid reference to the police action, and defendants had expressed their intent to expose all facts concerning the incidents.

4. FRAUD—UNDUE INFLUENCE—EVIDENCE—ARREST—DEPOSITIONS.

Admitting into a trial concerning the obtaining of money by undue influence a third person's deposition dealing in part with a police investigation of plaintiff's decedent's money which defendants had in their possession when arrested in connection with an action concerning the decedent's money was not error where defense counsel insisted that the entire deposition should be admitted if any portion were introduced into evidence and explicitly waived, on the record, all rights pertaining to the deposition and plaintiff's counsel and the court had expressed their willingness to allow only the relevant portions to be admitted.

5. FRAUD—UNDUE INFLUENCE—CRIMINAL PROCEEDINGS—MOTIVE.

Defense counsel's attempts to elicit evidence to disclose a motive for the institution of criminal proceedings against defendants in whose possession plaintiff's decedent's money was found, was outside the scope of the issues in an action brought by the plaintiff as administrator to have the money returned as being gained by use of undue influence where plaintiff did not participate in any manner in the institution of the criminal proceedings.

6. FRAUD—UNDUE INFLUENCE—CONFIDENTIAL RELATIONSHIP—EVIDENCE.

A confidential relationship could properly be found to have existed between an elderly decedent and defendants where the plaintiff-administrator showed the defendants and the decedent had been close friends for many years, that defendants accompanied decedent to the hospital shortly before her death, that one of the defendants spent considerable time at the hospital taking care of the decedent and conducting financial transactions for the decedent, and that the defendant and the decedent conducted themselves toward one another as though they were members of the same family.

7. FRAUD—UNDUE INFLUENCE—INTEREST.

Awarding plaintiff administrator interest on decedent's money, recovered from defendants because of their use of undue influ-

ence in gaining the money, from the date of decedent's death to the date when a criminal charge of conspiracy against defendants was nol-prossed was not error where the parties stipulated at trial that the judge, not the jury, would make the decision as to interest if plaintiff won a verdict on the sum in dispute, and the judge determined that because of defendants' action the money in dispute had been put beyond the possession of decedent's estate for the period under consideration and that interest was properly allowable for that time.

8. TRIAL—MISTRIAL—WITNESSES—COMMUNICATION WITH JURORS.

A mistrial was not necessary where one of plaintiff's witnesses was observed talking to a juror in a corridor outside the courtroom where the trial judge, in chambers, inquired into the incident from those involved, learned that the conversation was not connected with the subject matter of the trial, and having determined that the other jurors were unaware of the incident, dismissed the juror in question from the case and proceeded with the trial, and the defendant neither asserted nor demonstrated that she had been prejudiced by the trial judge's action.

9. TRIAL—INSTRUCTIONS TO JURY—FRAUD—UNDUE INFLUENCE.

Failure to instruct the jury precisely as requested by plaintiff administrator regarding the presumption of undue influence arising from the relationship between the decedent and the defendant was not error where the instruction given, when read in its entirety, was a fair statement of the law and was in accord with decisional holdings.

Appeal from Berrien, Chester J. Byrns, J. Submitted Division 3 March 9, 1972, at Grand Rapids. (Docket No. 11513.) Decided April 27, 1972.

Complaint by Russell J. Taylor, administrator of the estate of Alma Sturm, against Hannah Klahm and Marianne Piner to recover monies wrongfully obtained from plaintiff's decedent. Judgment for plaintiff against defendant Klahm; judgment of no cause of action for defendant Piner. Defendant Klahm appeals; plaintiff cross-appeals against defendant Piner. Affirmed.

*Taylor & Taylor* (by *Robert S. Yampolsky),* for plaintiff.

*Davidow & Davidow,* for defendants.

Before: T. M. BURNS, P. J., and FITZGERALD and DANHOF, JJ.

FITZGERALD, J. Plaintiff administrator brought this action against defendants Hannah Klahm (mother) and Marianne Piner (daughter) to recover monies alleged to have been wrongfully obtained by them from plaintiff's decedent, Alma Sturm, at or near the time of her death in October 1963. This case is before this Court for the second time, following a third trial had before a jury in Berrien County Circuit Court. The first trial, in 1965, resulted in a mistrial. In 1966, a second trial resulted in a judgment on a jury verdict in favor of plaintiff for the sum of $20,891.33; the appeal to this Court occasioning a reversal and remand for a new trial. *Taylor v Klahm,* 8 Mich App 516 (1967).[1] By amended complaint filed prior to the second trial, plaintiff alleged that defendants conspired to defraud and cheat said decedent by preying upon her elderly and senile condition and by exerting upon her illegal and undue influence. Prior to the third trial, leading to the instant appeal, defendants were granted partial summary judgment by the terms of which all references in the pleadings to conspiracy or to fraud generally were ordered stricken.

At the conclusion of the third trial, the jury returned a verdict in favor of plaintiff and against defendant Hannah Klahm in the amount of

---

[1] This Court held that plaintiff's opening statement reference to the fact that defendants had been charged with the crimes of conspiracy and perjury constituted prejudicial error.

$8,886.92, and a verdict of no cause of action in favor of defendant Marianne Piner in regard to the sum of $10,394.94 obtained from decedent by said defendant. The trial court denied the motions of defendant Klahm for judgment notwithstanding the verdict or, in the alternative, for a new trial, and also denied a motion for new trial filed by plaintiff as to defendant Piner. A claim of appeal by defendant Klahm and a claim of cross-appeal by plaintiff against defendant Piner were subsequently filed.

Alma Sturm was an elderly woman who was a distant relative and close friend of both defendants. Defendant Piner claimed that, about two weeks before the death of Alma Sturm, Mrs. Sturm directed defendant Piner to open at the Farmers & Merchants Bank, Benton Harbor, Michigan, a joint savings account for Sturm and Piner with $10,000 that Sturm gave Piner. At the time, Mrs. Sturm was in a hospital with a terminal illness. Piner did as directed and the joint savings account with right of survivorship was opened in both names. Within hours after decedent's death on October 23, 1963, defendant Piner appeared at the bank in person, withdrew the money and closed the account.

The second sum involved $8,886.92 which Alma Sturm possessed in a savings account in her name alone at the Peoples State Bank, St. Joseph, Michigan. Some three days before Mrs. Sturm's death, defendant Piner went to the bank to attempt to withdraw the money. Before releasing the money, the cashier called Alma Sturm who, following her release from the hospital, was staying at the home of defendant Klahm, mother of defendant Piner. After verbal authorization from Mrs. Sturm, the cashier gave defendant Piner the sum of $8,886.92.

Mrs. Piner testified that, after withdrawing said sum from decedent's savings account, she gave the money to the deceased who, according to the testimony of defendant Klahm, gave the money to her. The deceased purportedly told defendant Klahm to take the money to Germany, distribute a portion amongst deceased's kin, and keep the balance. This sum was later seized from defendant Klahm in Mt. Clemens, Michigan, by police for use in criminal proceedings instituted against defendants in regard to the assets of decedent Sturm's estate.

The testimony upon the trial of this cause established that during the critical period involved the deceased was alternately despondent, confused, restless, dependent, under medication, hallucinatory and delirious. Other testimony indicated that there were times when the deceased was competent.

Defendant Klahm raises several contentions of error as a basis for appellate relief. We consider the issues raised, as restated, below. None of the alleged errors require a reversal.

1. Defendant claims that the trial court improperly permitted plaintiff's counsel to engage in argument under the guise of his opening statement to the jury; and that the court's denial of defendants' motion for directed verdict made at the close of plaintiff's opening statement was error. The motion was predicated upon plaintiff's alleged failure to show the existence of a fiduciary relationship sufficient to afford a basis for a finding that undue influence was exercised by defendants upon decedent Sturm.

Plaintiff asserts that his opening statement was not argumentative, and a review of the transcript of trial proceedings reveals that plaintiff, in his statement, did no more than set forth the nature

of the evidence to be adduced, as he was entitled to do. Clearly, considerable latitude is allowed counsel in outlining to the jury the evidence to be submitted. *Cleavenger v Castle,* 255 Mich 66, 75 (1931). What constitutes a fair opening statement is largely a matter addressed to the trial court's discretion. *Coon v Williams,* 4 Mich App 325, 334 (1966). It cannot be said that in the instant case the trial court departed widely and injuriously from its discretionary bounds in allowing the opening statement of plaintiff to stand. *Scripps v Reilly,* 35 Mich 371 (1877).

Further, plaintiff asserts that the pleadings and opening statement were sufficient to raise the existence of a confidential relationship, citing *Coon v Williams, supra.* The trial court ruled likewise that, in his opening statement, plaintiff had properly raised the factual issue as to a confidential relationship between the defendants and decedent such as would give rise to a presumption of undue influence. *In re Wood Estate,* 374 Mich 278, 281 (1965). We agree. The denial of defendants' motion was not error.

2. Defendant claims that the trial court committed error in allowing plaintiff's counsel, in his opening statement, to make reference to the incident occurring in Mt. Clemens, Michigan, in 1964 wherein money obtained from decedent was found in defendants' possession after they had theretofore denied the existence of said money. The fact that the evidence would show that the money had been deposited by defendants in a safety deposit box belonging to Sophie Huecker, a friend of the defendants, in Mt. Clemens, was set forth by plaintiff's counsel in his statement.

Plaintiff submits that reference to the Mt. Clemens incident was relevant to the issues in this

case, both defendants having denied knowledge of the money, and having later admitted that the same was money which had belonged to decedent Sturm. We hold that the trial court did not commit error in allowing plaintiff's counsel, over objection, to set forth the evidence which he intended to offer pertaining to that incident, as a part of a full and fair statement of his case and of the facts expected to be proved. *Scripps v Reilly, supra.*

3. Defendant contends that the trial court erred in admitting testimony of Detective William Mihalik and the deposition of Sophie Huecker, which deposition dealt in part with the police investigation of the Mt. Clemens incident, and that the trial court limited defendant's showing of a motive on the part of plaintiff in instituting criminal proceedings against defendants and thereby committed error. The thrust of her position is that neither the deposition nor testimony in question was relevant to the issues involved upon the trial, namely: (1) the existence of a confidential or fiduciary relationship between defendants and decedent Sturm; (2) the exercise of undue or illegal influence upon decedent by either or both of the defendants; and (3) the damages, if any, done to plaintiff administrator. Defendant claims that inasmuch as the deposition and testimony were permitted to be introduced, she had no alternative but to attempt to go into the entire matter of the incident at Mt. Clemens and the criminal proceedings and perjury convictions which emerged therefrom.

Plaintiff asserts that, as regards the testimony of officer Mihalik relating to the discovery of the money missing from decedent's estate and found in defendants' possession in Mt. Clemens, the same was relevant and material to the issues in the

case, defendants having theretofore denied knowledge of the existence of the money. We agree. The record reveals that plaintiff had, nonetheless, voiced a willingness to follow guidelines set by the court to avoid reference to police action upon direct examination of witness Mihalik. However, plaintiff was subsequently allowed to elicit from witness Mihalik the fact that he was a police officer, on account of the statement of defendant's counsel that he intended to expose fully all matters pertaining to police investigation of this incident. Further, defense counsel stated on the record his insistence that all of Sophie Huecker's deposition be admitted into evidence if any portions thereof were to be so admitted, plaintiff's counsel having expressed a willingness to have only relevant portions thereof placed in evidence, and the trial court having agreed that admission might be limited to relevant portions of the deposition if defense counsel so desired. The insistence of defense counsel, however, that the whole of the deposition be admitted, if any portion thereof were to be admitted, precludes his assertion that admission of the same was error.[2] Additionally, it is noted that defendant's counsel, on the record, explicitly waived all rights pertaining to the deposition. It cannot be said that the trial court's admission of the testimony and deposition resulted in a miscarriage of justice. GCR 1963, 529.1.

Plaintiff also claims that, inasmuch as he did

[2] GCR 1963, 302.4, states in part: "At the trial * * * any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof * * * "

The Authors' Comments pertaining to the foregoing court rule state in part: "[F]ailure to object at the time when the deposition is offered in evidence will result in loss of the right to assign error to such admission, as with any other item of evidence." 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), § 2, p 57.

not participate in any manner in the institution of the criminal proceedings surrounding this case, any attempt on the part of defendant to elicit evidence to disclose a motive for the institution of such proceedings would clearly have been outside the scope of the issues in this civil case. GCR 1963, 301.3.[3] Defendant's assertion that she was improperly limited in the presentation of her proofs is without merit.

4. Defendant maintains that the proofs in this case failed to establish a fiduciary or confidential relationship between defendants and decedent and that the case of *In re Wood Estate, supra,* is not controlling of the instant appeal. Defendant concedes and the record reveals that defendants and decedent were close friends for many years; defendants accompanied decedent to the hospital shortly before her death; defendant Piner spent considerable time at the hospital taking care of decedent and conducted financial transactions for decedent; and defendants cared for decedent upon her release from the hospital. As the record indicates, defendants and decedent conducted themselves toward one another as though they were members of the same family.

The existence of a confidential relationship or fiduciary relationship is a question of fact. In *In re Wood Estate, supra,* the Court stated in part at pp 282–283, 285:

" 'Another point in issue is whether there was a confidential or fiduciary relationship existing * * *

" ' "One founded on trust or confidence reposed by one person in the integrity and fidelity of another. * * * The term is a very broad one. * * * The rule

---

[3] "The summary of results [of the pretrial conference] controls the subsequent course of the action unless modified at or before trial to prevent manifest injustice."

embraces both technical fiduciary relations, and those informal relations which exist whenever one man trusts in and relies upon another." ' Black's Law Dictionary (3d ed), Fiduciary or Confidential Relations, p 775.

*  *  *

"Contestant produced ample evidence that a confidential or fiduciary relationship, as this Court has broadly defined the terms, existed between testator and Miss Flemming, by which we mean only that a jury would have been entitled so to find on the basis of that evidence.

*  *  *

"Once such a relationship is established and the fiduciary or an interest which he represents benefits therefrom, the law recognizes a presumption that he in whom trust was reposed exercised his influence unduly."

The principles announced in *In re Wood Estate, supra,* referred to in this Court's prior review of this case *(Taylor v Klahm, supra)* are pertinent to the facts of the instant case. In the case at hand, the jury could find, on the basis of the evidentiary facts, that the elderly decedent, in the last days of her long life, was in poor health and that her affairs were to a large extent taken over by defendants, in whose hands her care was placed.

In view of the broad definition of the term "confidential relationship" as set forth in *In re Wood Estate, supra,* and in view of the facts concerning the close relationship which existed between defendants and the deceased in the instant case, the trial court did not commit error in allowing the jury to determine the question as to the existence of a confidential relationship and the consequent applicability of the presumption of undue influence in regard to the conduct of either or both defendants toward decedent.

5. Defendant asserts that errors were committed

by the trial court in regard to the instructions to the jury. We have considered her arguments in relation thereto and find them to be without merit. A full reading of the entire jury charge manifests that the same was fair to defendants. *Coon v Williams, supra.*

6. Defendant Klahm submits that the trial court committed error in awarding interest to plaintiff from the date of death of the deceased, October 23, 1963, to August 29, 1967, the date upon which the criminal charge of conspiracy to defraud, levied against defendant Klahm, was nol-prossed.[4] The court, in its opinion denying motions for new trial, observed that the right to the $8,886.92 vested in the estate of decedent Sturm upon her death, the jury having determined by its verdict that said sum did not rightfully belong to defendant Klahm. The court determined that because of the actions of defendant Klahm, which put the money beyond the possession of the estate for the period under consideration, interest was properly allowable during said period. Interest at a rate of 5% per annum for the period under consideration was thus decreed by the court to be proper.

It is to be noted that the parties stipulated at trial that the question of interest would not be submitted to the jury, but that the court would make a decision thereon in the event that plaintiff won a verdict as to the sum in question. In a case such as the present, the question as to the allowance of interest is a matter within the sound discretion of the trial judge. *Cyranoski v Keenan,*

---

[4] When defendant Klahm was arrested on February 20, 1964, at Mt. Clemens, Michigan, on the charge of conspiracy to defraud, the sum of $8,886.92 which came from deceased's account in St. Joseph, Michigan, was seized by police as evidence. The criminal charge was, on August 29, 1967, nol-prossed, since defendant pleaded guilty to perjury for her testimony in the Berrien County Probate Court during discovery proceedings into deceased's assets.

363 Mich 288 (1961); *Taines v Munson,* 19 Mich App 29 (1969). No abuse of discretion was committed by the court in the particular herein urged. *Spalding v Spalding,* 355 Mich 382 (1959).

7. Defendant claims that the court erred in denying a motion for mistrial following an incident in which witness Mihalik was detected by defendant Piner's husband talking to a juror in a corridor outside the courtroom. In chambers, the trial judge inquired into the incident from those involved; learned that the conversation was not connected with the subject matter of this case; and having determined that the other jurors were unaware of the incident, dismissed the juror in question from the case and proceeded with the trial. No prejudice has been asserted nor demonstrated by defendant in regard to the action taken by the trial court as a result of the incident in question.

8. Defendant's contention that the trial court committed error in denying her motion for judgment notwithstanding the verdict, or in the alternative, for new trial is likewise without merit. The evidence, as viewed from a point of view most favorable to the plaintiff, does not herein reflect a factual record so clear that it may be said that reasonable minds may not disagree. *Killen v Benton,* 1 Mich App 294 (1965). Plaintiff presented sufficient evidence to raise an issue of fact for the jury as to the existence of a confidential relationship. The pleadings and evidence, together with the charge to the jury, presented a properly submissible case. The verdict rendered as to defendant Klahm was not against the great weight of the evidence so as to require a new trial. *Killen v Benton, supra.*

Plaintiff-cross-appellant, having filed a claim of

cross appeal against defendant-cross-appellee, Marianne Piner, raises several contentions of error. We find that none of the alleged errors merit a reversal.

1. Plaintiff contends that the trial court erred in failing to instruct the jury precisely as requested by him as regards the presumption of undue influence. Contrary to plaintiff's contention, however, the instruction, as given, was in accordance with the decision in *In re Wood Estate, supra.* The trial judge charged the jury in pertinent part as follows:

"I'm going to instruct you on this presumption. A confidential relationship is one founded on faith, trust or confidence reposed by a person in the integrity, judgment, advice and fidelity of another. The term is a very broad one. The rule embraces both technical fiduciary relationships and those informal relationships which exist whenever one man trusts in and relies on another.

"In that connection if it appears by a preponderance of the evidence produced in the case that the transactions in issue between the defendants, or either of them, and Mrs. Sturm arose because of her faith, confidence and trust in the defendants, or either of them, and the defendant or defendants received benefits because of an unfair use of such confidential or trust relationship, then the law presumes that undue influence was used to get any benefits received. The burden then is cast upon the defendants or such one you found or find had a confidential or trust relationship as a recipient or recipients of any gifts under such conditions to prove that such gift or gifts was or were the voluntary act or acts of Mrs. Sturm uninfluenced by any confidential or trust relationship.

"You, as the trier of the facts must make that determination based on the evidence in the case, and to that evidence you shall apply the definition of a confidential or trust relationship which I have given you a moment or two ago.

"If you find that the plaintiff has failed to prove that

a confidential or trust relationship existed between Mrs. Sturm and Mrs. Klahm or Mrs. Piner, or both, at the time they or one of them got the money, then you need go no further and return a verdict of no cause for action for the defendants or for the one you find did not have such relationship with Mrs. Sturm or who received no benefit therefrom.

"If you do not find that the defendants, or either of them, have sustained the burden of rebutting this presumption of undue influence, then you must find for the plaintiff against the defendant or defendants who you find did receive benefits because of a confidential or trust relationship with Mrs. Sturm."

The charge was a fair one. When completely read, it presented the jury with a fair statement of the law and was not erroneous. *Gilson v Bronkhorst,* 353 Mich 148, 160 (1958); *Cooper v Tranter Manufacturing, Inc,* 4 Mich App 71, 79 (1966).

2. Plaintiff also claims that, inasmuch as the trial court had to give a corrective instruction as to the quantum of evidence necessary to rebut the presumption of survivorship in a joint savings account, the jury became confused as to the proper quantum of proof. We rule that, given the curative instruction, any prejudice to plaintiff, of which none is shown, was cured.

Plaintiff's other assertions of error need not be considered herein, the same not having been properly briefed. *Mitcham v Detroit,* 355 Mich 182 (1959).

Affirmed. Costs to the prevailing parties.

All concurred.