# STATE OF MICHIGAN

# COURT OF APPEALS

MARK P. SPREITZER,

       Plaintiff-Appellant,

v

RICHARD R. HUTCHISON,

       Defendant-Appellee.

UNPUBLISHED
March 20, 2018

No. 335414
Oakland Circuit Court
LC No. 2016-152478-CH

Before: TALBOT, C.J., and BECKERING and CAMERON, JJ.

PER CURIAM.

In this real estate matter, plaintiff, Mark P. Spreitzer, appeals as of right the trial court's order denying his motion for partial summary disposition with respect to his claim to declare void and set aside a quitclaim deed, granting summary disposition of that claim in favor of defendant, Richard R. Hutchison, pursuant to MCR 2.116(I)(2), and granting defendant summary disposition of plaintiff's claims for tortious interference with a contract and fraudulent conveyance, pursuant to MCR 2.116(C)(10). We affirm.

## I. FACTS AND PROCEEDINGS

Plaintiff and defendant began sharing an apartment together in 1990 and splitting expenses equally. Both parties were married men living separately from their wives. Plaintiff's wife was residing at the couple's home on Woodcrest in Royal Oak (the "Woodcrest home"). In 1992, plaintiff added defendant as a signatory on his bank accounts and defendant assisted plaintiff with his day-to-day finances. In 1997, plaintiff inherited a home (the "LaSalle home"), and he and defendant thereafter moved together to the LaSalle home, where defendant continued to contribute to the costs and expenses of maintaining the home. In January 2005, plaintiff and defendant executed a mortgage for a home equity loan and used the funds to make improvements to the LaSalle property. Defendant made all the payments on the loan.

At plaintiff's request, defendant provided the name of an attorney who could assist plaintiff and his wife in preparing a deed. Defendant provided plaintiff with the name of attorney Robert Tighe. Tighe had previously provided legal services to plaintiff. On April 1, 2005, plaintiff contacted Tighe by telephone because he and his wife wanted to add defendant to the deed for the LaSalle property. Tighe prepared a quitclaim deed in advance of the meeting with plaintiff and his wife and, on April 28, 2005, plaintiff and his wife executed the quitclaim deed drafted by Tighe and notarized by him. The quitclaim deed conveyed the LaSalle property

-1-

to "Mark P. Spreitzer, Victoria Spreitzer, husband and wife, and Richard R. Hutchison, a married man, as joint tenants with rights of survivorship." The quitclaim deed was recorded on May 9, 2005. Tighe explained to plaintiff that defendant would become an owner of the property when the deed was recorded.

In 2007, plaintiff was hospitalized for a month and, after being released from the hospital, he moved in with his wife at the Woodcrest home. In 2009, plaintiff and his wife moved to the LaSalle home, and defendant moved to the Woodcrest house, because plaintiff's wife was having difficulty maneuvering around at the Woodcrest house. Defendant paid the expenses of the Woodcrest house. After plaintiff's wife died in 2010, plaintiff continued to live at the LaSalle house and defendant continued to live at the Woodcrest house until he purchased a condominium in 2012. After purchasing the condominium, defendant transferred it to his trust by quitclaim deed on September 15, 2013.

Plaintiff decided to sell the LaSalle property and placed it on the market on January 29, 2016. He entered into a purchase agreement for the sale of the property in March 2016. The title commitment showed that defendant held an ownership interest in the property. Defendant demanded $80,000 to release his interest in the property. Plaintiff and the prospective purchasers of the property executed a mutual release from the purchase agreement on May 26, 2016.

Plaintiff filed the present action against defendant on April 13, 2016. Count I of plaintiff's complaint sought to "void and set aside" the April 2005 quitclaim deed. Plaintiff alleged that the deed did not convey a valid gift to defendant because plaintiff and his wife did not intend to convey a present interest in the LaSalle property to defendant, but rather, only a future interest in the property in the event they predeceased defendant. Plaintiff also alleged that he suffered brain damage due to a closed head injury sustained in a car accident and that he lacked the mental capacity to execute the quitclaim deed. Lastly, he alleged that he had a fiduciary relationship with defendant, and therefore, defendant had the burden of showing that he did not unduly influence plaintiff to execute the quitclaim deed. Count II of plaintiff's complaint alleged a claim for tortious interference with plaintiff's contractual relations. Plaintiff alleged that defendant instigated plaintiff's breach of the purchase agreement for the LaSalle property. Count III of plaintiff's complaint alleged a claim for fraudulent conveyance. Plaintiff alleged that defendant embezzled funds from plaintiff and used the funds to purchase the condominium, which defendant later fraudulently conveyed to his trust for the purpose of evading liability to his creditors.

Plaintiff filed a motion for partial summary disposition under MCR 2.116(C)(10) on his claim to set aside and void the quitclaim deed. Plaintiff asserted that the deed was void because it resulted "from undue influence or misrepresentation, as transferred by a mentally impaired person to one acting in a fiduciary relationship." Defendant filed a cross-motion for summary disposition under MCR 2.116(C)(10) and MCR 2.116(I)(2) on all of plaintiff's claims. He maintained that there was no issue of material fact that the quitclaim deed conveyed a valid gift to defendant or that plaintiff was legally competent to execute the deed, that plaintiff failed to present any evidence that defendant instigated a breach of an existing contract, and that the evidence, viewed in a light most favorable to plaintiff, dispelled the allegations supporting plaintiff's fraudulent conveyance claim.

The trial court granted summary disposition of Count I in favor of defendant under MCR 2.116(C)(10) and MCR 2.116(I)(2), holding that that there was no genuine issue of material fact that the deed conveyed a valid interest in the LaSalle property to defendant. Specifically, the court concluded that the submitted evidence established that the quitclaim deed intended to convey a present interest in the LaSalle property to defendant, that the conveyance fell outside the scope of any fiduciary relationship between the parties, and that there was no factual support for plaintiff's claim that he lacked the mental capacity to execute the deed. The trial court also granted defendant summary disposition of plaintiff's remaining claims. With respect to Count II, the court held that plaintiff failed to present any evidence that defendant instigated a breach of an existing contract, or that even if defendant did instigate a breach, that he did so without justification. With respect to Count III, the court held that the uncontroverted evidence established that defendant purchased his condominium with his own money, and not any monies stolen from plaintiff.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Id*. When reviewing a motion under MCR 2.116(C)(10), "this Court considers all the evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact." *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 437; 760 NW2d 878 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183, 665 NW2d 468 (2003). "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002).

"A deed is a contract, *Negaunee Iron Co v Iron Cliffs Co*, 134 Mich 264, 279; 96 NW 468 (1903), and the proper interpretation of the language in a deed is therefore reviewed de novo on appeal," *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008)." *In re Rudell Estate*, 286 Mich App 391, 402; 780 NW2d 884 (2009).

## III. ANALYSIS

### A. VALIDITY OF THE QUITCLAIM DEED

The quitclaim deed for the LaSalle property conveyed the property to "Mark P. Spreitzer, Victoria K. Spreitzer, husband and wife, and Richard R. Hutchison, a married man, as joint tenants with full rights of survivorship." A joint tenancy with full rights of survivorship is comprised of a joint life estate with dual contingent remainders. *Albro v Allen*, 434 Mich 271, 275-276; 454 NW2d 85 (1990). "The dual contingent remainders of the 'joint tenancy with full rights of survivorship' are indestructible. A cotenant's contingent remainder cannot be destroyed by an act of the other cotenant." *Id*. at 275-276 (citation omitted). One of several joint tenants with a right of survivorship may not sell the property without the consent of the others. See *Mannausa v Mannausa*, 374 Mich 6, 8; 130 NW2d 900 (1964), overruled on other grounds by

*Albro*, 434 Mich 271 (1990). Plaintiff and defendant are the only remaining joint tenants of the LaSalle property. Therefore, unless and until defendant consents to a sale of the LaSalle property, plaintiff has no right to sell the property. *Id*.

Plaintiff contends, however, that the quitclaim deed conveying the property to defendant as a joint tenant with rights of survivorship is void because it was not a valid gift. There is no dispute that plaintiff and his wife intended to transfer the LaSalle property to defendant. Plaintiff contends that he and his wife did not intend to convey a present interest in the property; rather, they only intended for title to transfer to defendant if plaintiff and his wife predeceased defendant. "It may be stated generally that the three elements necessary to constitute a valid gift are these: (1) that the donor must possess the intent to pass gratuitously title to the donee; (2) that actual or constructive delivery be made; and (3) that the donee accept the gift." *In re Rudell Estate*, 286 Mich App at 404. At issue in this case is donative intent.

"Whether a party has acted with donative intent presents a question of fact." *Id*. But to determine the extent of the interest conveyed by a valid deed, this Court is required to start by examining the plain language of the deed. *Huntington Woods v Detroit*, 279 Mich App 603, 619-620; 761 NW2d 127 (2008). The plain language of a deed is the best evidence of the parties' intent, and "[t]he general rule is that [t]he controlling intent is that which is expressed in the instrument, rather than any belief or secret intention of the party or parties which may have existed at the time of execution." *Rudell Estate*, 286 Mich App at 409 (quotation marks and citation omitted). In the present case, plaintiff's intent is manifested by the plain and unambiguous language of the deed, which conveys the LaSalle property to plaintiff, his wife, and defendant "as joint tenants with full rights of survivorship." This language unambiguously expresses intent to convey a present, complete, unrestricted interest in the property to defendant. See *Huntington Woods*, 279 Mich App at 620. The deed, which was signed and recorded, contains no language restricting defendant's interest. Given the plain language of the deed, which was duly recorded, the trial court properly held that there was no genuine issue of material fact that plaintiff intended to convey a joint tenancy with full rights of survivorship.[1]

Plaintiff next argues that the deed is void as a gift to a fiduciary. He contends that defendant acted as his fiduciary and, therefore, had the burden of showing that he did not unduly influence plaintiff's decision to convey the gift to defendant. While the question whether a fiduciary duty exists is a question of law for the court to decide, see *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 43; 698 NW2d 900 (2005), "[t]he existence of a confidential relationship or fiduciary relationship is a question of fact." *Taylor v Klahm*, 40 Mich App 255, 264; 198 NW2d 715 (1972). A fiduciary relationship is one "founded on trust or confidence reposed by one person in the integrity and fidelity of another. The term is a very broad one, the rule embraces both technical and fiduciary relations, and those informal relations which exist whenever one man trusts in and relies upon another." *Van't Hof v Jemison*,

---

[1] Plaintiff relies on extrinsic evidence in his affidavit in arguing that the deed does not reflect his actual donative intent and that he did not understand the legal effect of the conveyance. However, extrinsic evidence may not be used to contradict the terms of a written agreement. *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 367; 320 NW2d 836 (1982).

291 Mich 385, 393; 289 NW 186 (1939) (quotation marks and ellipsis omitted). "When a fiduciary relationship exists, the fiduciary has a duty to act for the benefit of the principal regarding matters within the scope of the relationship." *Prentis Family Foundation*, 266 Mich App at 43. In *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 20; 824 NW2d 202 (2012), this Court relied on *In re Karmey Estate*, 468 Mich 68 74 n 2; 658 NW2d 796 (2003), to define a fiduciary relationship as

> a relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships – such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client – require the highest duty of care. Fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer. [Quotation marks and citation omitted.]

At most, the evidence established that defendant had a fiduciary relationship and correlative duty to plaintiff with respect to ensuring that plaintiff's bills were paid on time and that his accounts were not overdrawn. Plaintiff presented no evidence that defendant acted as a fiduciary with respect to real estate conveyances, or that advising plaintiff regarding real estate transactions was within the scope of any fiduciary relationship existing between plaintiff and defendant. The trial court properly held that any advice with respect to real estate conveyances was not within the scope of the fiduciary relationship between plaintiff and defendant and, consequently, the burden did not shift to defendant to show that the conveyance was not the result of undue influence by him.

Lastly, plaintiff asserts that the quitclaim deed is voidable because he lacked the mental capacity to understand the nature and effect of executing the deed. Plaintiff alleged in his complaint that he was involved in an automobile accident in 2002 and that he suffered a closed head injury that resulted in "brain damage" that affected his cognitive functioning and left him susceptible to defendant's undue influence.

"The test of mental competency to execute a deed is whether [the] grantor has sufficient capacity to understand in a reasonable manner the nature and effect of the act he is doing." *Hillman v Huitt*, 249 Mich 1, 4-5; 227 NW 729 (1929). As the Michigan Supreme Court explained in *Barrett v Swisher*, 324 Mich 638, 641; 37 NW2d 655 (1949):

> The test of mental capacity of a grantor in a deed is whether at the time he executed the deeds in question he had sufficient mental capacity to understand the business in which he was engaged, to know and understand the extent and value of his property, and how he wanted to dispose of it, and to keep these facts in his mind long enough to plan and effect the conveyances in question without prompting and interference from others. [Quotation marks, citation, and ellipsis omitted.]

Plaintiff presented no evidence to support his claim that he suffered a closed head injury because of the 2002 automobile accident. Conversely, defendant presented the police report from the February 16, 2002 automobile accident. The report for the single-vehicle accident states that "Driver #1 [plaintiff] states he was the lone occupant of the vehicle. Stated he remembered losing control of the car and the car spinning then coming to a stop. Driver reports no injuries" (*Id.*). Plaintiff offered no evidence to refute the police report. He also failed to offer any medical evidence indicating that he was treated for a closed head injury after the accident or that he suffered brain damage as a result of injuries sustained in the accident.

Defendant also presented plaintiff's employment records that indicated that the only time plaintiff missed work after the automobile accident and until he was determined to be disabled in 2004 was when plaintiff injured his pinky finger when he tripped over a child at school on December 2, 2003. Plaintiff was seen at Occupational Health Partners the same day and a "medical and work status report" indicated that plaintiff was able to return to restricted work the same day. Plaintiff offered no evidence to refute the employment records.

The evidence offered by plaintiff in support of his argument that he was mentally incompetent at the time the deed was executed was a "Notice of Award" from the Social Security Administration, dated September 21, 2004, which awarded him monthly disability benefits beginning in September 2004. The letter, however, contains no explanation of the reason that plaintiff was awarded employment disability benefits. Plaintiff also offered a January 26, 2005 discharge summary from his admission to a psychiatric day hospital unit, as well as an August 23, 2005 discharge summary from a similar admission. The discharge summaries indicate that plaintiff had a history of depression and mental health issues, but nowhere do the records mention plaintiff's cognitive ability or his mental competency at the time the deed was executed. Plaintiff admitted that between 1997 and 2012 he had never been declared incompetent by any court and never had a court-appointed conservator or guardian.

In sum, plaintiff failed to produce evidence to create a genuine issue of material fact with respect to his mental capacity to execute the quitclaim deed. Therefore, the trial court properly denied plaintiff's motion for partial summary disposition and properly granted summary disposition in favor of defendant with respect to plaintiff's claim that he lacked the mental capacity to execute the deed.

## B. TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

Plaintiff's argument that the trial court erred by granting summary disposition of his claim for tortious interference with a contract is premised on his claim that the quitclaim deed is void, which we have already rejected. Nonetheless, the trial court properly granted summary disposition of the claim.

"The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Knight Enterprises v RPF Oil Co*, 299 Mich App 275, 280; 829 NW2d 345 (2013) (quotation marks and citations omitted). " 'One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.' " *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131;

649 NW2d 808 (2002), quoting *Feldman v Green*, 138 Mich App 360, 378, 360 NW2d 881 (1984). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v R L Polk Co*, 193 Mich App 1, 12-13, 483 NW2d 629 (1992). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l*, 251 Mich App at 131.

Plaintiff concedes that he did not consult with defendant before placing the LaSalle property on the market or before entering into a purchase agreement for the sale of the property, even though he could not deliver marketable title without defendant's consent. Even assuming that plaintiff had a valid contract with the prospective purchasers, defendant's refusal to release his enforceable interest in the property does not, by itself, demonstrate that defendant instigated a breach of contract or that he acted with malice. Plaintiff has provided no evidentiary support for his assertion that defendant acted with vengeance in delaying and stopping the sale of the property. Moreover, the submitted documentary evidence establishes only that plaintiff and the prospective purchasers mutually released the purchase agreement. Plaintiff presented no evidence to show how any breach occurred or who breached the agreement. Accordingly, plaintiff failed to establish a genuine issue of material fact with respect to his claim of tortious interference with a contractual relationship.

## C. FRAUDULENT CONVEYANCE

Plaintiff alleged in his amended complaint that when defendant purchased his condominium in 2012, he did so with money embezzled from plaintiff, and that defendant fraudulently conveyed the property to his trust in order to place it out of the reach of creditors. In his deposition, plaintiff identified a series of financial transactions that allegedly demonstrated defendant's embezzlement. Defendant presented uncontroverted evidence to establish that he purchased the condominium with his own money and that the money allegedly embezzled from plaintiff was transferred from one of plaintiff's accounts to another of plaintiff's accounts.

Presumably in light of defendant's documentary evidence that disproved plaintiff's allegation that defendant embezzled funds from plaintiff and used the funds to purchase his condominium, plaintiff simply asserts on appeal that "[r]egardless of the source of funds used to purchase the condo, the transfer to the trust is fraudulent as to creditors" under MCL 566.131(1). Plaintiff fails to state, however, what facts remain in dispute. The trial court did not err in granting summary disposition in favor of defendant with respect to this claim.

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Thomas C. Cameron