FARAH *v.* NICKOLA.

1. FRAUDS, STATUTE OF—MEMORANDUM—DESCRIPTION—EXTRINSIC TESTIMONY.

> Extrinsic testimony to supplement a description in a memorandum for the sale of real estate, or an interest therein, claimed to be insufficient under the statute of frauds, is admissible for the purpose of identifying the property, provided it is not contradictory or inconsistent with the memorandum description but merely shows that no other property could have been in contemplation (CL 1948, § 566.108).

2. SAME—PURPOSE OF STATUTE.

> The statute of frauds exists in the law for the purpose of preventing fraud or the opportunity for fraud, not as an instrumentality to be used in aid of fraud or as a stumbling block in the path of justice.

3. SAME—MEMORANDUM—DESCRIPTION.

> Description in memorandum for sale of real estate reading "600 feet deep of property known as G–6265 N. Saginaw Road Beecher Twp. Mt. Morris, Michigan. The above named property beginning on South Corner of Saginaw Road. 1000 foot frontage on N. Saginaw Road" *held*, a sufficient description to satisfy the statute of frauds, since little, if any, extrinsic evidence would be necessary to identify the property (CL 1948, § 566-.108).

4. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.

> The Supreme Court hears chancery cases *de novo* but does not reverse decrees unless persuaded they are not in accordance with the just rights of the parties and gives due consideration to the conclusions of the trial judge who had the advantage of seeing the witnesses, listening to their testimony, and observing the manner in which it was given.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 49 Am Jur, Statute of Frauds §§ 348, 349.
Sufficiency of description or designation of land in contract or memorandum of sale, under statute of frauds. 23 ALR2d 6.
[4] 3 Am Jur, Appeal and Error §§ 815, 895, 896.

5. SPECIFIC PERFORMANCE—LAND CONTRACT—FRAUD—CONSIDERATION
    —EVIDENCE.
    Trial judge's findings in suit for specific performance of alleged
        agreement to sell land that defendants had not been fraudu-
        lently induced to sign the agreement and that there was not
        any side inducement in addition to the consideration therein
        expressed is not disturbed under record presented.

Appeal from Genesee; Roth (Stephen J.), J. Submitted April 17, 1958. (Docket No. 6, Calendar No. 47, 372.) Decided June 11, 1958. Rehearing denied July 15, 1958.

Bill by Jiryis J. Farah and Joe Abbott against David Nickola and Mary D. Nickola for specific performance of agreement to sell real estate. Decree for plaintiffs. Defendants appeal. Affirmed.

*Joseph & Joseph,* for plaintiffs.

*Andrew J. Transue (Crawford, Sweeny, Dodd & Kerr,* of counsel) for defendants.

KAVANAGH, J. Plaintiff Jiryis J. Farah filed a bill of complaint in Genesee county circuit court seeking specific performance of an alleged agreement with defendants Nickola for purchase and sale of real estate owned by the defendants. Decree having entered for plaintiffs granting specific performance, defendants appeal.

On May 7, 1953, the following written agreement was entered into by the plaintiff Jiryis J. Farah and the defendants David Nickola and Mary D. Nickola:

"May 7, 1953
"Received of Jiryis J. Farah, $5,000.00 (Five Thousand & No/100 Dollars for Deposit on 1000 Feet frontage by 600 Feet deep of property known as G-6265 N. Saginaw Road Beecher Twp. Mt. Morris, Michigan. The above named property beginning on

South Corner of Saginaw Road. 1000 Foot frontage
on N. Saginaw Road at $60.00 per foot.
/s/ DAVID NICKOLA
/s/ MARY D. NICKOLA

Witness:
/s/ SHIRLEY VINCENT
/s/ ANNE D. NICKOLA

"It is further agreed that an additional Twenty-Five
Thousand ($25,000.00 Dollar will be paid within
Four Weeks from date or before. To David and
Mary D. Nickola. The balance of Thirty Thousand
($30,000.00) Dollars will paid, at $300.00 per month.
or more, plus interest at 5% according to a land
contract signed by both parties, starting one month
after close of deal.
/s/ DAVID NICKOLA
/s/ MARY D. NICKOLA
/s/ JIRYIS J. FARAH.

Witness:
/s/ SHIRLEY VINCENT
/s/ ANNE D. NICKOLA"

Defendants contend:

(1) that the writing is insufficient to satisfy the
requirements of the statute of frauds* because of
a lack of a sufficient description of the premises in-
volved;

(2) that plaintiff Farah exercised fraud and de-
ception to induce defendants, particularly defend-
ant Mary D. Nickola, to execute said agreement;

(3) that the agreement set out was not in fact
the actual agreement of the parties so far as con-
sideration stated is concerned; that, in fact, there
was an agreement between them that the plaintiff
Farah was to pay an additional $25,000 "under the
table."

It would appear from the testimony that plaintiff
Farah and defendants had been negotiating for a

---

* See CL 1948, § 566.108 (Stat Ann 1953 Rev § 26.908).—REPORTER.

purchase and sale of property for a considerable period of time, and on May 7, 1953, plaintiff Farah and defendant David Nickola appeared together at the Saginaw branch of the Genesee County Savings Bank, where they asked the assistant cashier and manager, James A. Procunier, to prepare an instrument acknowledging receipt by Mr. Nickola of $5,000 from Mr. Farah. They indicated in substance that a piece of land approximately 1,000 by 600 feet was to be sold by defendants Nickola to plaintiff Farah for $60,000, at the rate of $60 per front foot. This was the only mention to Mr. Procunier of the consideration or the price to be paid for the piece of land. Later in the day they went to the combination store and home of defendants, purportedly to obtain the signature of defendant Mary D. Nickola. After considerable discussion relative to Mary D. Nickola signing the paper prepared at the bank, Anne D. Nickola, daughter of David and Mary D. Nickola, was shown the paper by plaintiff Farah. Anne D. Nickola decided that she would draft a new instrument. A friend, Sally Olson, assisted with the typing. The result of their workmanship was exhibit A, attached to the bill of complaint and the subject matter of this law suit. After Anne D. Nickola and Sally Olson drafted the new instrument it was signed by plaintiff Farah and defendants. It was witnessed by Anne D. Nickola and a girl friend, Shirley Vincent, who was present.

Defendants, their daughter, Sally Olson, and Shirley Vincent all testified that plaintiff Farah promised to give defendants the sum of $25,000 in addition to the amount of consideration set up in the instrument. Some of the witnesses used the term "under the table," others indicating "on the side." All testified that prior to the signing by Mary D. Nickola, plaintiff Farah made certain representations to her about getting her son, David Nickola,

Jr., who was presently living away from home, to return to live with his parents if Mary D. Nickola would sign agreeing to sell. Plaintiff denied any representations were made with reference to the alleged under the table payment of $25,000, and, also, denied inducing Mary D. Nickola to sign said instrument on the representation that he would induce her son to return home.

The $5,000 consideration paid at the time the instrument was signed was by check, which is shown as exhibit B and bears the indorsement of David Nickola and Mary D. Nickola, with the bank stamp of May 9, 1953. A few days later David Nickola went to plaintiff and asked for some additional money, saying that he had debts to pay. Plaintiff testified he advised him that the "time is not due." David Nickola again asked for $5,000, and plaintiff gave him a check for this amount, shown as exhibit C and bearing the indorsement of David Nickola and Mary D. Nickola, with the clearance through the bank shown as May 12, 1953.

Francis J. George testified that he is a practicing attorney in the city of Flint, Michigan, and that on or about May 20, 1953, he, plaintiff Farah, and another gentleman named Dewey Ogden went to the residence of David and Mary D. Nickola; that they took $20,000 in cash and tendered this cash sum to Mr. and Mrs. Nickola; that he informed the Nickolas that he was representing plaintiff Farah, and that they were prepared to close the sale and wanted a contract covering the property. This testimony was supported by Mr. Ogden. Attorney George further testified that after Mr. and Mrs. Nickola conversed together in some language other than English, Mr. Nickola then stated that he was not going to sell the property, that his wife wouldn't let him go through with the deal; that Mr. Nickola talked about the son, and the fact that he should

have considered the boy, that the boy might have wanted the property; that no mention was made of any side payment of $25,000 or any sum whatsoever; that no mention of Farah's alleged promise to induce defendants' son to return home was made.

The trial court rendered a written opinion, in which he stated:

"The testimony of David Nickola is significant with respect to the 'deal.' In reply to the question as to whether it was his position that there was no 'deal' for the sale of the land or that there was a 'deal' but that it was for $85,000, he replied: 'Deal for $85,000.' This, it appears to the court, when taken together with the evidence in the case, disposes of the allegations of the defendants except for 2 matters: (1) whether the written agreement satisfied the statute of frauds with respect to the description of the premises, and (2) the matter of the amount of money to be paid."

The court held that the description, though inartistic, is sufficient to locate the premises with certainty, and that the instrument expressly specifies the money to be paid and the terms upon which it is to be paid. The court granted a decree for specific performance.

Defendants appeal, claiming that the lower court erred in finding that the claimed contract satisfied the statute of frauds; that the lower court erred in finding that the contract was not uncertain, indefinite, incomplete, and therefore enforceable; that the lower court erred in finding that the contract was not induced by fraud.

This Court has recently liberalized its interpretation of the statute of frauds so far as permitting extrinsic testimony to supplement a description in a memorandum for sale of real estate for the purpose of identifying the property. *Goldberg* v. *Mitchell*, 318 Mich 281.

Reference is made in this case to *Cramer* v. *Ballard,* 315 Mich 496, in which case Mr. Justice BOYLES, writing in concurrence with the opinion of Mr. Justice BUSHNELL, said (p 510):

"We are mindful of the fact that this is a case in equity. The statute of frauds exists in the law for the purpose of preventing fraud or the opportunity for fraud, not as an instrumentality to be used in aid of fraud or as a stumbling block in the path of justice. While no fraud is alleged or proven in this case, an attempt is made to rely upon the statute and thereby to defeat the undisputed intent of these parties, and this in a chancery court."

Mr. Justice BOYLES then concludes his opinion with this statement (p 511):

"To the extent that our previous decisions may be considered inconsistent with this opinion, on the specific question as to admissibility of extrinsic testimony to supplement a description in a memorandum for sale of real estate, or an interest therein, for the purpose of identifying the property, not contradictory or inconsistent with the memorandum description, but merely to show that no other property could have been in contemplation, it must be understood that the court now declines to follow such decisions."

This Court in the case of *Klever* v. *Klever,* 333 Mich 179, cited with approval the cases of *Cramer* v. *Ballard, supra;* and *Eggleston* v. *Wagner,* 46 Mich 610.

Little, if any, extrinsic evidence would be necessary to identify the property covered in the instant case. The property is described as "600 Feet deep of property known as G–6265 N. Saginaw Road Beecher Twp. Mt. Morris, Michigan. * * * beginning on South Corner of Saginaw Road. 1000-foot frontage on N. Saginaw Road." It was a sufficient description to satisfy the statute of frauds.

As to the question of whether or not the defendants were fraudulently induced to enter into said agreement by the promise of $25,000 "under the table" payment, and whether Mary D. Nickola was fraudulenty induced to enter into said contract by reason of the representations made by plaintiff that he would cause her son to return home to live with defendants, was a question of fact that was determined adversely to the defendants by the trial judge. A review of the testimony fails to convince the writer that he would have reached any different conclusion, or that the interests of justice would require any different disposition of the case. The trial court had the advantage of seeing the witnesses, listening to their testimony, and observing the manner in which such testimony was given. While this Court hears the matter *de novo* on the matter submitted here, due consideration should be given to the conclusions of the trial judge. *Zak* v. *Gray,* 324 Mich 522; *Kwiatkowski* v. *Antonecki,* 329 Mich 32. In *Moore* v. *Moore,* 231 Mich 209, 210, we said:

"We hear chancery cases *de novo;* but we do not, and should not, reverse decrees unless we are persuaded they are not in accordance with the just rights of the parties."

This same case was cited with approval by Mr. Justice Sharpe in *Kelley* v. *Dodge,* 334 Mich 499.

A review of the testimony in this case leads us to the fact that this Court would not have decided otherwise.

The decree of the lower court is affirmed, with costs in favor of plaintiffs-appellees.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Edwards, and Voelker, JJ., concurred.