47 Mich. App. 299 (1973)
209 N.W.2d 452
In re KANABLE ESTATE
GEORGEFF
v.
DAVIS
Docket No. 13696.
Michigan Court of Appeals.
Decided May 23, 1973.
Robert L. Miles and George Van Kula, for contestants.
Raymond L. King (Smith & Brooker, P.C. [by Richard G. Smith and Glenn F. Doyle], of counsel), for proponents.
Before: DANHOF, P.J., and R.B. BURNS and J.H. GILLIS, JJ.
Leave to appeal denied, 390 Mich 765.
J.H. GILLIS, J.
Contestants, a sister, nieces, and nephews of the deceased, challenged the validity of testatrix Alice Kanable's last will and testament. Alice Kanable died January 22, 1971 at age 79. At a jury trial, contestants argued that her will should be set aside as the product of undue influence exercised by proponents, Ernest and Monetta Davis. Secondly, they argued that testatrix lacked mental capacity to make a will. The jury returned a verdict favorable to contestants on the question of undue influence.
*301 Proponents-appellants urge reversal due to alleged trial court error in denying a directed verdict. Appellants assert insufficient evidence to create jury questions as to confidential relationship and undue influence.
A brief summary of facts is essential. Proponent, Ernest Davis, first met Mrs. Kanable in the early 1930's when he married her niece. For a time the couple resided across the street from testatrix. They were divorced in the early 1940's while Davis was in military service. After his divorce and discharge from the service, he resided for six months in testatrix's home until he married his present wife in 1946.
When Mrs. Kanable moved to northern Michigan in the late 1940's all contact was severed except occasional visits. After a 22-year absence, proponent visited testatrix in July 1970 when rain prevented him from working on a nearby construction job. About three weeks later, he returned to visit accompanied by his wife. The visits continued until, by October, Mrs. Davis spent nearly all her time with Mrs. Kanable. On November 2, 1970, Mr. and Mrs. Davis moved in with testatrix at her request, since Mrs. Kanable's doctor advised her not to live alone due to her failing health. Testimony indicated Mrs. Kanable feared being placed in a nursing home. A few days earlier, she had executed two wills naming the Davises as sole beneficiaries of her $61,000 estate.[1]
The circumstances surrounding execution of the wills merit close attention, since these circumstances, together with the Davises' reappearance after a long absence, the exploitation of Mrs. *302 Kanable's fear of being placed in a convalescent home, and an alleged confidential relationship[2] are the pivotal factors on which contestants relied.
Conflicting testimony reveals either Mrs. Kanable or Mrs. Davis made a phone call to attorney Calvin Talhelm's office for an appointment to draw a new will. For the previous five years, he had been Mrs. Kanable's attorney. On October 28, 1970, the attorney drew a will in favor of the Davises, naming his wife as executrix, which he had done on prior wills drafted for Mrs. Kanable. Either Mrs. Davis or Mrs. Kanable provided, admittedly in Mrs. Davis' handwriting, a memorandum listing the beneficiaries' address and the property owned by Mrs. Kanable. Mrs. Davis accompanied Mrs. Kanable to the office and remained in the room while the will was drawn. Later the will was executed. Accounts as to possession of the will after its execution are conflicting. Talhelm testified Mrs. Kanable wanted him to retain possession, but Mrs. Davis said she should have custody as the beneficiary. Talhelm stated he told Mrs. Davis he believed the will was invalid because it was obtained by undue influence. He advised Mrs. Davis to place it in Mrs. Kanable's safety deposit box after he relinquished control.
Mrs. Davis testified that she and the testatrix returned to Mr. Talhelm's office after driving nearly all the way home because the testatrix discovered the absence of the prior will and wanted to keep it.
On arriving home, according to Mrs. Davis, Mrs. Kanable reread the will and became upset when she discovered Mr. Talhelm's wife was the executrix. *303 On Mrs. Davis' suggestion, she drew another will, naming Ernest Davis as executor. On October 29, 1970, Byron Gallagher, an attorney from Mt. Pleasant and a witness for proponents, redrafted the will. After interviewing Mrs. Kanable alone, he altered the will drawn by Mr. Talhelm to insert Ernest Davis as executor. He also inserted a specific clause excluding relatives from any bequest after determining the testatrix's intent. The attorney and other witnesses testified Mrs. Kanable appeared to be mentally alert at the time of execution.
The motion for directed verdict made by the proponents required the judge to decide whether, viewing all the competent evidence and permissible inferences drawn from it in the light most favorable to the contestants, the jury could reasonably return a verdict in favor of the contestants. See In re Wood Estate, 374 Mich 278, 291 (1965).
Proper consideration of the disposition of the motion is complicated by the presumption of undue influence, which is usually proven by circumstantial evidence. That presumption shifts the burden of proof to the proponents when the contestant produces the facts which give rise to the presumption. In order to raise the presumption of undue influence the contestant must establish a confidential or fiduciary relationship between the testatrix and beneficiary under the contested will and benefits flowing to the beneficiary due to the relationship. Proponents here assert contestants failed to establish those basic facts. Proponents contend the only evidence produced by contestants showing a fiduciary or confidential relationship was the fact they had frequent visits with Mrs. Kanable and then lived with her just before her demise. Proponents cite In re Cottrell's Estate, 235 *304 Mich 627 (1926), contending those facts were insufficient as a matter of law.
Cottrell is distinguishable. There, the testator's daughter had lived with the deceased for several years, and routinely carried on his business affairs. Other evidence influenced the Court in determining that those facts were insufficient to raise the presumption of undue influence, since other children had been in disfavor for several years, while the beneficiary was described as a "dutiful daughter" who had "practically given her life's work to her father". The Court held the mere opportunity to exert undue influence, absent other elements, was not sufficient to raise the question. Here, there are other elements.
The existence of a confidential relationship is a question of fact. The judge properly denied the motion for directed verdict for resolution by the jury of that question. As stated in Taylor v Klahm, 40 Mich App 255, 264-265 (1972):
"The existence of a confidential relationship or fiduciary relationship is a question of fact. In In re Wood Estate, supra, the Court stated in part at pp 282-283, 285:
"`"Another point in issue is whether there was a confidential or fiduciary relationship existing * * *
"`"`One founded on trust or confidence reposed by one person in the integrity and fidelity of another. * * * The term is a very broad one. * * * The rule embraces both technical fiduciary relations, and those informal relations which exist whenever one man trusts in and relies upon another.' Black's Law Dictionary (3d ed), Fiduciary or Confidential Relations, p 775."'

* * *
"The principles announced in In re Wood Estate, supra, referred to in this Court's prior review of this case (Taylor v Klahm [8 Mich App 516 (1967)]) are *305 pertinent to the facts of the instant case. In the case at hand, the jury could find, on the basis of the evidentiary facts, that the elderly decedent, in the last days of her long life, was in poor health and that her affairs were to a large extent taken over by defendants, in whose hands her care was placed.
"In view of the broad definition of the term `confidential relationship' as set forth in In re Wood Estate, supra, and in view of the facts concerning the close relationship which existed between defendants and the deceased in the instant case, the trial court did not commit error in allowing the jury to determine the question as to the existence of a confidential relationship and the consequent applicability of the presumption of undue influence in regard to the conduct of either or both defendants toward decedent." (Emphasis supplied.)
Appellants also assert error in the denial of their motions for judgment notwithstanding the verdict and for new trial. Neither motion should be granted if there is evidence to make an issue for the jury. A motion for new trial may be granted in the sound discretion of the trial court on numerous grounds of mistake, irregularity, prejudice, or injustice in the proceedings, or in the event that the verdict is "against the great weight of the evidence". GCR 1963, 527.1, 527.1(5). However, the trial court found no irregularities, prejudice, or injustice warranting a new trial. He also found sufficient evidence to support the jury verdict. The court properly denied the motion for new trial.
The final test for undue influence is whether the will of the testator has been overborne by another so that what purports to be the testator's will is in reality the will of the other. In re Spillette Estate, 352 Mich 12 (1958); In re Langlois Estate, 361 Mich 646 (1960). There is nearly universal agreement that when a susceptible testator, influenced *306 by a confidential relationship with someone who has the opportunity and disposition to influence him, makes a will which favors confidant, undue influence may be found to have existed. Our review of the record indicates that sufficient evidence of each element was produced to support the jury's verdict.
Proponents urge that opposing counsel pursued a course of conduct deliberately calculated to deny a fair trial to appellants. The proper standard is whether counsel's misconduct denied litigants their right to a fair trial. Benmark v Steffen, 374 Mich 155 (1965); Sauve v Carling Brewery Co, Inc, 374 Mich 487 (1965). While the trial record shows some potentially irrelevant material, objection by appellants is notably absent. No authority need be cited for our "no objection-no error" rule. In view of the importance of the trial judge's discretion in determining fairness of counsel's conduct, and the demands of effective trial advocacy, absent objection below, we find no merit to appellants' assertion.
Affirmed. Costs to appellees.
All concurred.
NOTES
[1] A will executed January 1, 1970 had designated Mr. Davis' first wife and some friends as beneficiaries. This voided a will drawn April 30, 1968 benefitting another niece and the same friends.
[2] The Davises eventually obtained control over two savings accounts and a checking account belonging to Mrs. Kanable.