DARE v O'CONNOR

OPINION OF THE COURT

1. FRAUDS, STATUTE OF—APPEAL AND ERROR—PRESERVING QUESTION.

Failure to plead the statute of frauds or to advert to it at trial forecloses appellate review of the issue (MCLA 566.108).

2. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—FINDINGS.

The Court of Appeals reviews chancery cases *de novo* but does not disturb the findings of the chancellor unless the Court would be compelled to have arrived at a different conclusion had it been in his position.

3. CONTRACTS—SPECIFIC PERFORMANCE—SALE OF LAND—MEMORANDUM—AMBIGUITY—EVIDENCE—INTENTION OF PARTIES.

A trial judge properly received evidence of the intention of the parties apart from a memorandum of a contract for the sale of land which was susceptible of two diametrically opposed interpretations because courts have historically been required to take testimony, weigh, and evaluate it when an instrument supporting a claimed agreement is by its own terms ambiguous, unclear, or equivocal.

CONCURRENCE BY J. H. GILLIS, P. J.

4. FRAUDS, STATUTE OF—SALE OF LAND—MEMORANDUM—SUFFICIENCY.

*A memorandum of a contract for the sale of land which failed to specify time of closing, time of performance, or time and manner of paying the balance of the purchase price did not make the agreement unenforceable under the statute of frauds because where the contract is silent as to time of performance or payment, absent the expression of any contrary intent, the law will presume a reasonable time (MCLA 566.108).*

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545.

[2] 5 Am Jur 2d, Appeal and Error § 839.

[3–6] 71 Am Jur 2d, Specific Performance § 1.

5. FRAUDS, STATUTE OF—SALE OF LAND—MEMORANDUM—SUFFICIENCY
—PAROL EVIDENCE.

As a general rule, a memorandum of a contract for the sale of land must be complete in and of itself and leave nothing to rest on parol in order to satisfy the statute of frauds; however, extrinsic testimony is admissible to supplement a description in a memorandum for sale of real estate if the evidence is not contradictory or inconsistent with the memorandum description, but merely shows that no other property could have been in the contemplation of the parties (MCLA 566.108).

6. SPECIFIC PERFORMANCE—SALE OF LAND—MEMORANDUM—AMBIGU-
ITY—EVIDENCE—FRAUDS, STATUTE OF—PAST PERFORMANCE.

A grant of specific performance of a contract for the sale of land was not error even though the memorandum of the contract was incomplete and its description of the real estate ambiguous where: (1) plaintiffs' evidence as to the description of land included in the contract was overwhelming and defendants' was incredible; (2) defendants did not specifically raise the statute of frauds as an affirmative defense in their pleadings; and (3) even if the contract failed to satisfy the statute of frauds it could be specifically performed on a part performance theory since plaintiffs had paid part of the purchase price, made improvements in the property, and had taken possession, or at least constructive possession, of part of the property.

Appeal from Ogemaw, Allan C. Miller, J. Submitted Division 2 August 11, 1973, at Lansing. (Docket No. 14470.) Decided November 28, 1973.

Complaint by Donald I. Dare, Florence M. Dare, Perry Dare, and Adelaide Dare against Dennis O'Connor and Aileen O'Connor for specific performance of a contract for the sale of land. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Jennings, Turkelson & Crawford, P. C.,* for plaintiffs.

*Roger J. Oeming,* for defendants.

Before: J. H. GILLIS, P. J., and HOLBROOK and O'HARA,* JJ.

O'HARA, J. Dennis O'Connor and his wife Aileen became signatories to a written instrument which was handwritten by Mrs. O'Connor. It was signed by the other involved parties, Donald, Florence, Perry, and Adelaide Dare. The instrument by whatever name it should be designated provided:

"*Terms*                                    July 29, 1970
"5000.00—Cash
"Bal Land Contract—Monthly Payments Arranged
"Donald Dare and Florence Dare, Perry Dare and Adelaide Dare agree to purchase from Dennis O'Connor and Aileen O'Connor for the sum of $10,000.00 the following description—The Old Forty, A Subdivision of Part of the S.E. 1/4 of the N.E. 1/4 of Sec. 7, T. 23 N., R. 4 E., Hill Township, Ogemaw Co. Mich. —Above description less approximately 1-1/2 acres. Deposit of $100.00 is hereby acknowledged—

"/s/ *Dennis O'Connor*              "/s/ *Donald Dare*
Dennis O'Connor                    Donald Dare

                                   "/s/ *Florence Dare*
"/s/ *Aileen O'Connor*             Florence Dare
Aileen O'Connor
                                   "/s/ *Perry Dare*
                                   Perry Dare

                                   "/s/ *Adelaide Dare*
                                   Adelaide Dare"

When the Dares retained counsel to examine the abstract covering the property it disclosed that the plat of the Old Forty Subdivision had never been recorded. Mr. O'Connor called the Dares and advised them that he was getting a surveyor to get a

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

specific description of the lands sold. The Dares replied that there was nothing to survey; that they had bought the whole 38-1/2 acres and stood willing to pay the balance of the purchase price in cash. O'Connor thereupon said the whole deal was off. He returned the $100 down payment. The Dares began an action for specific performance of what they considered the enforceable purchase and sale agreement. The trial judge ordered specific performance as prayed in the complaint. The O'Connors appeal of right.

The transcript testimony in this case exceeds 100 pages. We have read it with extreme care. It contains controverted testimony as to the intention of the parties. The trial judge, recognizing as we do, that the instrument standing alone is susceptible of two diametrically opposed interpretations allowed both sides great latitude in explaining their respective positions.

It would be of no service to bench or bar to detail the conflicts. It is mostly a "you did—we did not" record.

In the last analysis this whole case boils down to whom the trial judge believed and to whose testimony he accorded the greater weight. True there are scholarly discussions in the briefs as to the sufficiency of the instrument to remove the transaction from control by the statute of frauds.[1] Strictly speaking that issue is not before us though appellant briefed it thoroughly and extensively. The statute was not pleaded. No advertence to it was made on trial. Under these circumstances we would depart from long settled and well reasoned precedent to entertain the issue on review. *Trisch v Fairman,* 334 Mich 432; 54 NW2d 621 (1952).

Even so, the parol evidence rule as applied to

---

[1] MCLA 566.108; MSA 26.908.

statute of frauds cases is discussed at length and with copious citations pro and contra for the judge's reception of evidence of the intention of the parties.

We read the record cold. The trial judge had the feel of the case from the spoken words and the demeanor of the witnesses on the stand. We would stretch the appellate process to breaking to substitute our findings of fact and evaluation of weight and credibility of testimony for his.

The rule in Michigan abides. We review chancery cases *de novo.* We do not disturb the findings of the chancellor unless we would be compelled to have arrived at a different conclusion were we in his position. *Futernick v Cutler,* 356 Mich 33, 44; 95 NW2d 838, 844 (1959). We could not say this of the conclusions of the trial court in the case at bar.

We do no violence to settled law when we hold as we do here; whether the statute of frauds is involved or not, courts have historically been required to take testimony, weigh, and evaluate it when an instrument supporting a claimed agreement is by its own terms ambiguous, unclear, or equivocal. Certainly that is the situation in the case at bar.

For authority, if need be, see the discussion and citations in *Bosley v Prueter,* 44 Mich App 716, 720; 205 NW2d 861, 863 (1973).

We affirm, costs to the appellee.

HOLBROOK, J., concurred.

J. H. GILLIS, P. J. *(concurring in result).* Defendants appeal a trial court judgment granting plaintiffs specific performance of a land contract. First, defendants argue that the memorandum agree-

ment does not satisfy the statute of frauds because it fails to specify time of closing, time of performance, or time and manner of paying the balance of the purchase price.[1] The trial court properly held that failure to specify these terms does not make this agreement unenforceable under the statute of frauds. In *Duke v Miller,* 355 Mich 540; 94 NW2d 819 (1959), the Court considered a memorandum which provided:

"Detroit, Mich., Sept. 24, 1957.
"Received of Mr. Newell Duke $150.00 Dollars as Down Payment on Lot 109 on Fenkel
                              "Balance $4,350
"$150.00                     (s) Ray Miller"

Despite a failure to mention any terms at all, the Court held the memorandum valid against a statute of frauds defense. Where the contract is silent as to time of performance or payment, absent the expression of any contrary intent, the law will presume a reasonable time.

"Indulgence of that presumption or inference does not amount to the court's making a new contract for the parties or varying its terms, but merely gives effect

---

[1] The majority says that since defendants did not affirmatively plead the statute of frauds or advert to it at trial, they cannot assert it on appeal. *Trisch v Fairman,* 334 Mich 432; 54 NW2d 621 (1952). Even though *Trisch* is well settled precedent, it is, nevertheless, a harsh procedural rule. And its application here is unusually harsh. While strictly speaking defendants did not plead the statute or advert to it at trial, they seemed to make an unartful attempt to do so. One of defendants' affirmative defenses asserts "that the agreement relied upon by the plaintiffs is not adequate in that every material matter concerning sale has not been agreed upon". And, defendants' attorney in his closing argument remarked, "[W]e do have a written instrument, and it may not be complete on its face. It doesn't appear to be complete on its face simply because there is no—the terms are not mentioned". Thus, I think it improper to dispose of the statute of frauds issues in this case *solely* on this procedural ground. However, this is *one* of my grounds for affirmance. *See infra.*

to what it is reasonable to assume the parties intended." *Duke v Miller, supra,* 543; 94 NW2d at 821.

*Klymyshyn v Szarek,* 29 Mich App 638; 185 NW2d 820 (1971), is a recent decision by this Court which upheld a memorandum agreement less complete than the one at bar. This Court in Klymyshyn pointed out that Michigan courts have shown a continuing disposition to liberalize their interpretation of the statute of frauds. I find that the memorandum here comes within this liberal trend.

In addition to the authority cited above, the trial court was impressed with the uncontradicted testimony of plaintiff Donald Dare, that shortly after signing the contract plaintiffs offered to pay the complete outstanding balance of $9,900 at closing. The court found that the only substantial term not incorporated was the time and manner of payment, and that this uncertainty was resolved by plaintiffs' offer.

The difficult question in this lawsuit is what realty is encompassed within the agreement. Plaintiffs contend it encompasses 40 acres minus 1-1/2 acres previously sold. Defendants argue this is a contract for the sale of just what it says, "The Old Forty, a subdivision * * * less approximately 1-1/2 acres". Under this interpretation only about 6 acres would be involved. Thus, the parties disagree over the inclusion of the 32-1/2 acre difference. The trial court freely admitted extrinsic evidence to resolve this question.

Both parties testified that during the preliminary discussions at the defendants' home, Mr. O'Connor showed plaintiffs a land survey entitled "The Old Forty, a subdivision of part of the S.E. 1/4 of the N.E. 1/4 of Section 7, T. 23 N. R. 4 E". Donald Dare testified extensively as to why he and

the other plaintiffs believed this survey to be one of the entire 40-acre tract. Mr. O'Connor denied most of this testimony. Dare also testified that plaintiffs were particularly interested in purchasing an old school building located on the 38-1/2 acre parcel. O'Connor admitted that at his home the parties did discuss the sale of the school building. He testified that plaintiffs asked how much he wanted for the school building, and that he said he was offered $10,000 at one time. However, under O'Connor's interpretation of the contract property description, the building would not be included in the sale since it is not part of The Old Forty.

The trial court was correct in its determination that 38-1/2 acres, not 6 acres, was intended to be conveyed; and was correct in granting specific performance of the contract so construed. My conclusion is based on three distinct legal theories. It is important to note that considered separately no one of these theories compels this conclusion, but considered together they conclusively mandate an affirmance of the lower court's ruling.

First, while I am not entirely in agreement with the trial court's reasoning, I think it properly admitted extrinsic evidence to explain the ambiguous property description. Defendants objected throughout the trial to admission of this evidence, citing the parol evidence rule in support of their position. The trial judge overruled these objections relying primarily on exceptions to the parol evidence rule and upon the doctrine of practical construction.

The property description is ambiguous; it cannot be determined what property was intended to be conveyed without the aid of extrinsic evidence. The question then becomes: Does the admission of extrinsic evidence to clarify a property description

in a written land contract violate the statute of frauds?

The general rule of law in this state is well settled; in order to satisfy the statute of frauds the memorandum must be complete in itself and leave nothing to rest on parol. *Gault v Stormont,* 51 Mich 636; 17 NW 214 (1883); *Benedek v Mechanical Products, Inc,* 314 Mich 494; 22 NW2d 901 (1946). However, an important exception to this rule, first pronounced in *Eggleston v Wagner,* 46 Mich 610; 10 NW 37 (1881), was reaffirmed by the Michigan Supreme Court in *Cramer v Ballard,* 315 Mich 496; 24 NW2d 80 (1946). The written agreement in *Cramer* described the property as "my farm". In ruling that extrinsic testimony could be admitted to identify the property, the Court held that extrinsic evidence is admissible to supplement a description in a memorandum for sale of real estate if the evidence is not contradictory or inconsistent with the memorandum description, but merely shows that no other property could have been in the contemplation of the parties. This standard of admissibility has been applied in a number of cases. *Wozniak v Kuszinski,* 352 Mich 431; 90 NW2d 456 (1958); *Farah v Nickola,* 352 Mich 513; 90 NW2d 464 (1958); *Emlong Nurseries, Inc v Warner,* 364 Mich 462; 110 NW2d 713 (1961).

The case at bar does not fit neatly within the *Cramer* rule. While the extrinsic testimony admitted is not contradictory or inconsistent with the memorandum description, it does not show conclusively that only the 38-1/2 acre tract could have been in a contemplation of the parties.

However, the trial court found, and I agree, that plaintiffs' evidence was overwhelming and defendants' was incredible. I am particularly impressed with three elements of plaintiffs' proofs. First,

plaintiffs spent many hours repairing and cleaning up the old school building. While defendants admit they gave plaintiffs permission to enter the school to repair it, they deny that this building was included in the property description. Second, when plaintiffs requested an abstract of the property they were purchasing, defendants · sent them an abstract covering the entire 38-1/2 acres. Third, on cross-examination, O'Connor admitted that the assessed value of the 38-1/2 acres was $4,600. This assessment is consistent with the $10,000 purchase price for the entire tract, but not with a $10,000 price for 1/6th of it. Because of the nature of these proofs I think the extrinsic evidence is admissible under the *Cramer* rule. As the Court in *Cramer* said:

"We are mindful of the fact that this is a case in equity. The statute of frauds exists in the law for the purpose of preventing fraud or the opportunity for fraud, not as an instrumentality to be used in the aid of fraud or as a stumbling block in the path of justice." 315 Mich 496, 510; 24 NW2d 80, 86.

Second, defendants did not specifically raise the statute of frauds as an affirmative defense in their pleadings.[2] Their objections at trial to the admission of extrinsic testimony were based on the parol evidence rule not upon the statute of frauds. The Michigan Supreme Court has held that this bars a defendant from relying on the statute of frauds defense on appeal. In *Trisch v Fairman,* 334 Mich 432; 54 NW2d 621 (1952), the Court held that the defense of the statute of frauds may not be first asserted on appeal, where the defense was not affirmatively pleaded, notwithstanding the fact that defendants' objections to parol evidence of an

[2] *See* fn 1, *supra.*

oral agreement were overruled and plaintiffs failed to object in the trial court to defendants' failure to plead the statute.

Third, even if we assume that this contract fails to satisfy the statute of frauds it can be specifically performed on a part performance theory. On the operation of this doctrine Corbin says:

> "The various factors that constitute what is called 'part performance' of the contract are numerous. They occur in varying combinations, with varying degrees of importance to be attached to each one. In each case, the court must weigh the sum total of factors, as they are found to exist; and the weakness or absence of some one factor on which emphasis is often placed may be compensated by the unusual strength and character of the other existing factors. Most courts are fully conscious that the 'part performance' doctrine is a judicial device to prevent the terms of a formal statute from doing grave injustice. It is a flexible device that has been, and may still properly be, molded to suit varying combinations of circumstances." 2 Corbin on Contracts, § 425, p 464.

Plaintiffs in this case paid defendants $100 on account of the purchase price. In addition, plaintiff Donald Dare mortgaged his house to raise the money needed to pay the $9,900 balance. Plaintiffs worked many hours cleaning and repairing the school building, this work being done with the knowledge and consent of defendants. Donald Dare purchased two locks and put one of them on the building. Dare's uncontroverted testimony was that Mr. O'Connor said he didn't want keys to these locks because he had no use for them. Plaintiffs also made several improvements in the school building. They purchased 200 gallons of fuel oil which was put into the school's fuel tanks; and they bought and installed window glass, two thermostats for the furnace, and some minor plumbing

fixtures. The total cost of these items was about $132. Thus, plaintiffs paid part of the purchase price, made improvements in the property, and took possession, or at least constructive possession, of part of the property.

The Supreme Court of Rhode Island was faced with a somewhat similar fact situation in *Najarian v Boyajian,* 48 RI 213; 136 A 767 (1927). In this specific performance case plaintiff had occupied the property for five years, paid defendants $500 on account of the $15,000 purchase price, and had made improvements on the property. In holding the part performance doctrine applicable to these facts the Court said:

"The claim that no sufficient part performance had taken place to remove the case from the statute of frauds is vitiated by respondents' failure to note that while part payment of the purchase price, possession or making improvements severally might not be sufficient to remove the case, yet a combination of all may be." 48 RI 213, 215; 136 A 767, 768.

In *Pearson v Gardner,* 202 Mich 360; 168 NW 485 (1918), vendor sued for specific performance. Vendor conceded that the written evidence of the contract was insufficient under the statute of frauds. Vendees had paid $100 of the $1800 purchase price and had taken possession of the property. They had also removed one of the partitions on the lower floor of the dwelling house, making two rooms into one; changed the location of the kitchen sink; trimmed a couple of trees in front of the house and had harvested the vegetables from the garden. The Court granted specific performance on a part performance theory saying:

"The only question involved is whether the defendants by their acts in making partial payment, taking

possession, reaping the fruits of the garden and changing the character of the premises have done sufficient to take the case out of the statute and to equitably entitle plaintiff to the decree for specific performance which was awarded by the court below. Partial payment of the purchase price alone is not sufficient to take the case out of the statute. Possession alone is insufficient, but where there is partial payment and possession accompanied by acts of ownership of the vendee changing the character of the freehold, and lessening its value, a court of equity may award a decree of specific performance." 202 Mich 360, 362; 168 NW 485, 486.

I would hold that the plaintiffs' acts in the case at bar, when viewed in their totality, justify granting specific performance under the part performance doctrine.

Affirmed. Costs to appellees.