KAR v HOGAN

OPINION OF THE COURT

1. EQUITY—JURY—ADVISORY VERDICT—EFFECT ON CHANCELLOR.
   An advisory jury verdict does not bind a chancellor in equity.

2. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW—FINDINGS.
   The Court of Appeals ordinarily reviews chancery cases *de novo,*
   giving considerable weight to the trial judge's findings; only if
   the Court finds, upon examination of the entire record, that it
   would have been required to reach a different result had it
   been in the chancellor's position, will the Court disturb those
   findings.

3. APPEAL AND ERROR—JUDGE'S FINDINGS—JUDGE'S REMARKS.
   The Court of Appeals will not disturb a trial judge's findings even
   though the judge made a statement which might possibly be
   construed as a declaration of his decision before hearing the
   entire case, where the statement did not demonstrate that the
   judge closed his mind to the balance of the proofs, and a careful
   reading of the judge's opinion shows he strove to balance
   justice's scales throughout the proceedings and he accurately
   and carefully assessed the proofs supporting each side.

DISSENT BY HOLBROOK, J.

4. EQUITY—CONFIDENTIAL RELATIONSHIP—UNDUE INFLUENCE—PRE-
   SUMPTIONS.
   *A prima facie case of undue influence will arise from facts*

REFERENCES FOR POINTS IN HEADNOTES

[1] 27 Am Jur 2d, Equity § 243.
   Nature and effect of jury's verdict in equity. 156 ALR 1147.
[2, 3] 27 Am Jur 2d, Equity §§ 266, 267.
[4] 27 Am Jur 2d, Equity § 43.
[5] 53 Am Jur, Trial § 93.
[6] 16 Am Jur 2d, Constitutional Law §§ 542–547.
[7] 20 Am Jur 2d, Courts §§ 82–86.
   Power of court to prescribe rules of pleading, practice, or procedure.
   158 ALR 715.

*sufficient to show a confidential relationship as the confidential relationship raises a rebuttable presumption of undue influence.*

5. TRIAL—JUDGES—PREJUDGMENT OF CASE—QUESTIONS OF FACT—PROOFS.

*A trial judge should not make up his mind or render his decision prior to hearing the entire case where there are questions of fact to be determined and the parties have not been given full opportunity to present all their proofs and to argue their respective positions; even the mere implication that an impartial forum may not have been provided is inappropriate.*

6. CONSTITUTIONAL LAW—DUE PROCESS—CIVIL MATTERS—CRIMINAL MATTERS—JUDICIAL PROCESS—RIGHT TO TRIAL.

*Due process is equally important in civil and criminal matters; it requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard.*

7. TRIAL—JUDGES—CONCLUSIONS OF FACT—EVIDENCE—COURT RULE.

*A trial judge may not make conclusions of fact which are not fully supported by the record. (GCR 1963, 517.1).*

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 April 9, 1974, at Detroit. (Docket No. 16953.) Decided August 13, 1974. Leave to appeal granted, 393 Mich —.

Complaint by Edward W. Kar and Irene Altshuler against Fred H. Hogan, executor of the estate of Edward Merkiel, deceased, to avoid a deed. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Komjathy & Komjathy,* for plaintiffs.

*Alton P. Shirley (George Stone,* of counsel), for defendant.

Before: J. H. Gillis, P. J., and Holbrook and
Van Valkenburg,* JJ.

J. H. Gillis, P. J. Plaintiffs, stepchildren of Julia
Kar, sought to invalidate a deed because of undue
influence. From a judgment in favor of defendant,
plaintiffs appeal.

John Kar, plaintiffs' father, married Julia in
1914. Julia, who remained childless, reared plain-
tiffs as though they were her own children. In
1917, the Kars purchased a farm which, at time of
trial, was valued at approximately $300,000. In
1951, John Kar died. In 1953, Julia married Ed-
ward Merkiel. In 1957 and 1966, Julia signed wills
devising the bulk of her estate to plaintiffs, and
creating a life estate in her husband. However, in
1969, Julia, in a "strawman" transaction, deeded
the farm to her husband and herself by the entire-
ties. Julia died in 1970, and Edward in 1971.
Edward's executor, Fred Hogan, is named defend-
ant in this case.

Plaintiffs claimed that the disinheriting deed
should be set aside because of confidential relation-
ship and undue influence. The trial court ruled
that Edward's confidential relationship with Julia
placed the burden on defendant to overcome the
presumption of undue influence. *In re Wood Es-
tate,* 374 Mich 278; 132 NW2d 35 (1965). An advis-
ory jury rendered a verdict for plaintiffs, but the
trial court disregarded its findings and ruled for
defendant. GCR 1963, 509.4.

Clearly, an advisory jury's opinion does not bind
a chancellor in equity. *Abner A Wolf, Inc v Walch,*
385 Mich 253; 188 NW2d 544 (1971).

This Court ordinarily reviews chancery cases *de
novo,* giving considerable weight to the trial

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

judge's findings. Only if we find, upon examination of the entire record, that we would have been required to reach a different result had we been in the chancellor's position, will we disturb those findings. *In re Hartman Estate,* 51 Mich App 192, 203–204; 215 NW2d 202, 208 (1974); *Dare v O'Connor,* 50 Mich App 550, 554; 213 NW2d 774, 776 (1973). A careful review of the record reveals a trial of confused facts, but does not convince us that we would have been required to reach a different result.

In examining the record, however, we have carefully scrutinized a statement of the trial judge which might possibly be construed as a declaration of the trial judge's decision before hearing the entire case. The trial judge stated:

"I want to be frank with able counsel. If I was deciding this nonjury, I would have no difficulty with it at all. I would hold for the defendant. I think all plaintiffs have shown was that *[sic]* the many, many plaintiffs have shown, namely, the opportunity of undue influence because this disposition of property was different from what the plaintiffs thought it was going to be. That doesn't make out a case of undue influence; it is an opportunity for undue influence. There is not one scintilla of evidence in this case. As a matter of fact, it is all to the contrary. She got sick, but to get sick, is, I think to dispose of one's state *[sic]*—most of us will never get to dispose of our estates—many of these are disposed of while they are thinking, you know, what is going to happen to it when we are sick. I am going to be very frank with counsel. To me there isn't even a prima facie case made out by the plaintiff. It is quite a different thing when you have the free jury situation *I think a jury case has been made out and the only question is in my mind is whether there is a jury case both as to the confidential fiduciary relationship and the undue influence.* I have to say that because of the nature of the relationship, namely, husband and wife, that in and of itself is a fiduciary relationship and

therefore it would go to the jury merely on undue influence." (Emphasis supplied.)

After careful scrutiny, we do not believe this statement violates the standard enunciated in *Wayne County Prosecutor v Doerfler,* 14 Mich App 428; 165 NW2d 648 (1968). Granted, the excerpted statement is ambiguous and confusing. The court asserts that plaintiffs offered not a scintilla of evidence, but rules nonetheless that a jury case has been made out. However, a common-sense reading shows that the court believes, and properly, that the burden of proof shifts to defendant upon proof of the existence of a confidential relationship. *Totorean v Samuels,* 52 Mich App 14; 216 NW2d 429 (1974). Further, *aside from* the fact of marriage, the court believes not a scintilla of evidence has been offered in support of plaintiffs' case. Indeed, plaintiffs themselves testified that their mother remained strong-willed, although physically ill. This ruling on the evidence does not demonstrate a closed or prejudiced mind.[1] Prejudice "stems from prae-judicare, to judge before one knows the facts".[2] To assume impartiality and fairness requires the fact-trier to retain a blank mind, forming no opinion until the moment of ultimate judgment, is both misleading and undesirable. The judge's statement does *not* demonstrate that the court closed its mind to the balance of the proofs. Indeed, a careful reading of the trial

---

[1] *Cf.* Nizer, *The Implosion Conspiracy,* 1973, pp 12–13:

"[A] judge * * * rendered a record number of decisions in one year. He was besieged by newspapermen to explain his achievement.

" 'Well,' he said, 'I listen to the plaintiff and decide the case immediately.'

" 'Don't you listen to the defendant too?' they ask.

" 'I used to,' he replied, 'but I found it confused me.' "

The trial judge cannot be accused of this fault.

[2] Nizer, *supra,* p 12.

judge's opinion shows he strove to balance justice's scales throughout the proceedings. He accurately and carefully assessed the proofs supporting each side, and concluded, against the advisory jury, that the disposition was the free act of Julia Kar Merkiel. Having carefully considered this record, we find no error on this ground.

Affirmed. Costs to defendant.

VAN VALKENBURG, J., concurred.

HOLBROOK, J. *(dissenting)*. This writer must dissent. This decision is the result of many troubled hours of consideration and reconsideration.

A review of the record presently before us reveals a trial of confused and difficult facts. This writer would be hard pressed to find that he would have been required to have reached a different result than the trial judge or that he would have been required to reach a different result than that of the jury had he been the trial chancellor. Were it not for the ill-advised statement by the trial judge following the presentation of plaintiffs' proofs, this writer could conscientiously affirm. It is unfortunate that this occurred, as otherwise the court's conduct of the trial, including the instructions to the jury, was exemplary. After completion of plaintiffs' case in chief, the trial court said:

"I want to be frank with able counsel. If I was deciding this nonjury, I would have no difficulty with it at all. I would hold for the defendant. I think all plaintiffs have shown was that *[sic]* the many, many plaintiffs have shown, namely, the opportunity of undue influence because this disposition of property was different from what the plaintiffs thought it was going to be. That doesn't make out a case of undue influence; it is an opportunity for undue influence. *There is not one scintilla of evidence in this case.* As a matter of fact, it

is all to the contrary. She got sick, but to get sick, is, I think to dispose of one's state *[sic]*—most of us will never get to dispose of our estates—many of these are disposed of while they are thinking, you know, what is going to happen to it when we are sick. I am going to be very frank with counsel. *To me there isn't even a prima facie case made out by the plaintiff.* It is quite a different thing when you have the free jury situation *I think a jury case has been made out and the only question is in my mind is whether there is a jury case both as to the confidential fiduciary relationship and the undue influence.* I have to say that because of the nature of the relationship, namely, husband and wife, that in and of itself is a fiduciary relationship and therefore it would go to the jury merely on undue influence." (Emphasis supplied.)

Preliminarily, this writer notes that there is internal inconsistency in the finding that there is not a prima facie case made and yet that the case was jury submissible. While not faced with a motion for directed verdict, it was inconsistent to find that there was not one scintilla of evidence but determine that at least two issues were for the jury. Black's Law Dictionary defines prima facie case as:

"Such as will suffice until contradicted and overcome by other evidence. A case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to contrary is disregarded.

" 'A litigating party is said to have a *prima facie* case when the evidence in his favor is sufficiently strong for his opponent to be called on to answer it. A *prima facie* case, then, is one which is established by sufficient evidence, and can be overthrown only by rebutting evidence adduced on the other side. In some cases the only question to be considered is whether there is a *prima facie* case or no. Thus a grand jury are bound to find a true bill of indictment, if the evidence before them creates a *prima facie* case against the accused; and for this purpose, therefore, it is not necessary for

them to hear the evidence for the defense. Mozley &
Whitley.' " (Citations omitted.)

A prima facie case of undue influence will arise
from facts sufficient to show a confidential rela-
tionship (which is itself a question of fact), as the
confidential relationship raises a rebuttable pre-
sumption of undue influence. *In re Wood Estate,*
374 Mich 278; 132 NW2d 35 (1965); *Totorean v
Samuels,* 52 Mich App 14; 216 NW2d 429 (1974).
*Cf. In re Kanable Estate,* 47 Mich App 299, 303–
305; 209 NW2d 452, 454–455 (1973), which was an
action to set aside a will as being a product of
undue influence. The Court wrote:

"The motion for directed verdict made by the propo-
nents required the judge to decide whether, viewing all
the competent evidence and permissible inferences
drawn from it in the light most favorable to the contest-
ants, the jury could reasonably return a verdict in favor
of the contestants. See *In re Wood Estate,* 374 Mich
278, 291; 132 NW2d 35, 44 (1965).

"Proper consideration of the disposition of the motion
is complicated by the presumption of undue influence,
which is usually proven by circumstantial evidence.
That presumption shifts the burden of proof to the
proponents when the contestant produces the facts
which give rise to the presumption. In order to raise the
presumption of undue influence the contestant must
establish a confidential or fiduciary relationship be-
tween the testatrix and beneficiary under the contested
will and benefits flowing to the beneficiary due to the
relationship. Proponents here assert contestants failed
to establish those basic facts. Proponents contend the
only evidence produced by contestants showing a fiduci-
ary or confidential relationship was the fact they had
frequent visits with Mrs. Kanable and then lived with
her just before her demise. Proponents cite *In re Cott-
rell's Estate,* 235 Mich 627; 209 NW 842 (1926), contend-
ing those facts were insufficient as a matter of law.

"*Cottrell* is distinguishable. There, the testator's

daughter had lived with the deceased for several years, and routinely carried on his business affairs. Other evidence influenced the Court in determining that those facts were insufficient to raise the presumption of undue influence, since other children had been in disfavor for several years, while the beneficiary was described as a 'dutiful daughter' who had 'practically given her life's work to her father'. The Court held the mere opportunity to exert undue influence, absent other elements, was not sufficient to raise the question. Here, there are other elements.

"The existence of a confidential relationship is a question of fact. The judge properly denied the motion for directed verdict for resolution by the jury of that question. As stated in *Taylor v Klahm,* 40 Mich App 255, 264–265; 198 NW2d 715, 720–721 (1972):

" 'The existence of a confidential relationship or fiduciary relationship is a question of fact. In *In re Wood Estate, supra,* the Court stated in part at pp 282–283, 285; 132 NW2d 39:

" ' " 'Another point in issue is whether there was a confidential or fiduciary relationship existing * * *

" ' " ' "One founded on trust or confidence reposed by one person in the integrity and fidelity of another. * * * The term is a very broad one. * * * The rule embraces both technical fiduciary relations, *and those informal relations which exist whenever one man trusts in and relies upon another."* Black's Law Dictionary (3d ed), Fiduciary or Confidential Relations, p 775.' "

* * *

" 'The principles announced in *In re Wood Estate, supra,* referred to in this Court's prior review of this case *(Taylor v Klahm,* 8 Mich App 516; 154 NW2d 529 [1967]) are pertinent to the facts of the instant case. In the case at hand, the jury could find, on the basis of the evidentiary facts, that the elderly decedent, in the last days of her long life, was in poor health and that her affairs were to a large extent taken over by defendants, in whose hands her care was placed.

" 'In view of the broad definition of the term "confidential relationship" as set forth in *In re Wood Estate, supra,* and in view of the facts concerning the close

relationship which existed between defendants and the
deceased in the instant case, the trial court did not
commit error in allowing the jury to determine the
question as to the existence of a confidential relation-
ship and the consequent applicability of the presump-
tion of undue influence in regard to the conduct of
either or both defendants toward decedent.' " (Emphasis
in original.)

Here, there was the relationship of husband and
wife plus failing health, ergo, there was enough
evidence to stand as a prima facie case.

While at the time of the statement, the trial
judge was traveling under the assumption that the
final determination would be made by the jury
(demand for which was made by plaintiffs), when,
in fact, it was required to be made by him, the
passage reveals a determination made early in the
trial which, when compared with the final deter-
mination of the trial court, reveals a judgment of
the case before it was finally submitted. In *Wayne
County Prosecutor v Doerfler,* 14 Mich App 428,
440; 165 NW2d 648, 654 (1968), Judge (now Jus-
tice) FITZGERALD wrote:

"A judge is not expected to bring with him to the
bench a blank mind and personality, as he becomes, by
necessity, a composition of the general experiences of
his life, refined and honed by his legal training and
legal experience so that the desired judicial tempera-
ment will hopefully emerge. To require a blank mind is
unreasonable, but to demand an impartial and clear
appraisal of each new case is not. A judge may well be
subconsciously prejudiced in one way towards the evi-
dence or the parties in a case before him. It is his duty
not to permit these prejudicies to override his responsi-
bilities in providing a fair forum for the determination
of controversy."

This writer is mindful that a trial judge should
not make up his mind or render his decision prior

to hearing the entire case where there are questions of fact to be determined and the parties have not been given full opportunity to present all their proofs and to argue their respective positions. Even the mere implication that an impartial forum may not have been provided is inappropriate. In *People v Thomas,* 390 Mich 93, 95; 210 NW2d 776, 777 (1973), the Court wrote:

"Defendant Thomas was erroneously denied an essential element of his due process right to a hearing and of his right to the assistance of counsel when the trial judge would not allow his attorney to make a closing argument. Moreover, we also find that the trial judge erroneously disregarded his position as an impartial fact finder by finally settling his mind before defense counsel was given an opportunity to review the facts from defendant's point of view."

Here, defendant had not presented his case in chief, much less had plaintiffs been given a chance to offer rebuttal evidence and to make their closing argument. Due process is equally important in civil matters and criminal. See, for instance, *Fuentes v Shevin,* 407 US 67, 82; 92 S Ct 1983, 1995; 32 L Ed 2d 556, 571 (1972) (replevin action); *Sniadach v Family Finance Corp of Bay View,* 395 US 337; 89 S Ct 1820; 23 L Ed 2d 349 (1969) (garnishment); *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970) (welfare benefits); *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971) (motor vehicle license); and, *Boddie v Connecticut,* 401 US 371, 377; 91 S Ct 780, 785; 28 L Ed 2d 113, 118 (1971) (access to courts for divorce actions by indigents), wherein the Court wrote:

"Prior cases establish, first, that due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle

their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard."

This writer feels that in the case at bar, due to prejudgment, plaintiffs were not given a meaningful opportunity to be fully heard. In *Payne v Lee,* 222 Minn 269, 275; 24 NW2d 259, 263–264 (1946), the Supreme Court of Minnesota wrote:

"The failure to provide a litigant a fair and impartial tribunal before which to adjudicate his private rights is also in violation of the due process clause of US Const, Am XIV, *Buck v Bell,* 143 Va 310; 130 SE 516; 51 ALR 855 [1925]; *Stahl v Board of Supervisors,* 187 Iowa 1342; 175 NW 772; 11 ALR 185 [1920]. In the latter case the Iowa Supreme Court said (187 Iowa 1352; 175 NW 776): 'The constitutional guaranties recognize, as a primal necessity that there be laws providing impartial tribunals for the adjudication of rights.' See 3 Willoughby, Constitution of the United States (2d ed), § 1124; 12 Am Jur, Constitutional Law, § 635."

The trial judge may well have been attempting to give direction in this difficult case, but his statement was inappropriate in that no matter how well or poorly the case was tried each party had the right to a complete hearing before a determination was made.

Additionally, certain other discrepancies militate towards reversal, as they demonstrate an understandable confusion on the part of the trial court. GCR 1963, 517.1 provides:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. It will be sufficient if the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without over elaboration of detail

or particularization of facts. If an opinion or memorandum decision is filed, it will be sufficient if the findings and conclusions appear therein. The clerk shall notify the attorneys for both parties of the findings of the court. Findings of fact and conclusions of law are unnecessary on decisions of motions except as provided in subrule 504.2. The findings of a circuit court commissioner, to the extent that the court adopts them, shall be considered as findings of the court. Requests for findings are not necessary for purposes of review. No exception need be taken to any finding or decision. Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it."

The trial court complied with this court rule; however, this writer finds that the trial court made conclusions of *fact* which are not fully record supported.

The court found:

"There is absolutely no evidence that there was any persuasion or undue influence of any kind asserted by the attorney, Mr. Hogan. It was against his economic interest, prospectively, to remove the farm from the probate estate. The particular disposition as to terms made sense, that is, if he died first, she would get the property, an understandable arrangement. *Human vanity is such that she might well have thought she would outlive him* and then have a full and free opportunity to do with the property as she saw fit. It is a very safe guess that neither foresaw a situation where their children would be contesting over the property." (Emphasis supplied.)

Initially, the lack of undue influence on the part of the attorney is irrelevant. Secondly, while it may

be a rational conclusion that Mrs. Merkiel thought she would outlive Mr. Merkiel, the facts do not readily lead to this conclusion. While there was testimony that Mrs. Merkiel was a robust, strong-willed woman, there also was testimony that her health was failing in that she suffered from a heart condition, high blood pressure, was diabetic, and overweight. There was testimony that in the last two years of her lifetime Mrs. Merkiel was hospitalized three times for periods of approximately ten days each.

The trial judge further stated:

"The court can appreciate the displeasure and disappointment of the two children and it is not just economic. They feel hurt that their mother has not followed through on what they thought was a promise. They feel much closer to her, they believe, *than the second husband's children.*" (Emphasis supplied.)

The wording of this statement says that Mr. Merkiel had children. The evidence revealed that he had not been previously married and there is no basis to assume he had children of his own.

In all fairness to the trial judge, due to the confused nature of proofs, if any decision was to be reached, it had to, in no small measure, be founded upon inferences and deductions. Under the pressure of ever-increasing court dockets and backlogs, errors will be made, particularly in cases presented as vaguely as this one. This writer has the highest respect for the ability and integrity of the trial judge, but is also cognizant of the truth that even the most fair of individuals on rare occasions err.

The facts of this case require reversal and a remand for a new trial before another judge.